Eugene J. McCARTHY et al., Plaintiffs,

v.

The Honorable Reubin O'D ASKEW
et al., Defendants.

No. 76–1460–Civ–NCR.

United States District Court,
S. D. Florida.

Sept. 15, 1976.

Terry DeMeo, of American Civil Liberties Union, Miami, Fla., for plaintiffs.

James Whisenand, Deputy Atty. Gen., Tallahassee, Fla., for defendants.

## PRELIMINARY AND PERMANENT INJUNCTION

ROETTGER, District Judge.

This matter arises from the complaint of Eugene McCarthy, an independent presidential candidate, in seeking to have his name placed on the Florida ballot in the 1976 presidential election to be held on November 2. Suit was filed pursuant to 42 U.S.C. § 1983 on behalf of Mr. McCarthy and plaintiffs Randy Meredith and Don Adams who are voters, and David Dombroski and Melinda Sterman, who are potential electors. Plaintiffs' request declaratory and injunctive relief. Jurisdiction is premised upon 28 U.S.C. §§ 1343(3) and 2201. Defendants are Reubin Askew, Governor of the State of Florida, Bruce Smathers, Secretary of State, and Mary Singleton, Director of the Division of Elections.

A hearing on the motion for preliminary injunction was held September 10, 1976. At the hearing, the parties stipulated that trial on the merits be advanced and consolidated with the hearing pursuant to Rule 65(a)(2). Defendants' motion to change venue under 28 U.S.C. § 1391(b) was withdrawn at the hearing and therefore waived under Rule 12. All exhibits attached to the pleadings were admitted by stipulation. No further evidence was offered.

Florida's statutory scheme provides that minor political parties may have the names of their candidates placed on the presidential election ballot upon fulfilling certain requirements.[1] However, Florida statutes provide no means by which an independent candidate for president may have his or her name placed on the ballot.[2] Plaintiffs contend that under this statutory scheme they are deprived of their constitutional rights under the first, fifth, twelfth, and fourteenth amendments; and that the state should therefore be enjoined from enforcing these statutes. Defendants resist the claim on the grounds that plaintiffs' complaint fails to state a cause of action, and additionally raise the doctrine of abstention and the defense of laches. These shall be treated first.

■ The first point raised by defendants in the motion to dismiss is that the court should abstain. This assertion is without merit. *Kusper v. Pontikes*, 414 U.S. 51, 54–55, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Harman v. Forssenius*, 380 U.S. 528, 535, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). The statutes in this case are clear and unambiguous, and there are no issues of state law for determination which could avoid the federal constitutional question. Therefore, abstention is inappropriate.

■ Defendants next assert the defense of laches, based on the evidence that although plaintiffs were notified of their status under Florida law in May of 1975, they waited until August 26, 1976 to file this suit. The correspondence in 1975 between the McCarthy campaign committee and the State Attorney General's office reflects such notice; however, it was reasonable for plaintiffs to have assumed that the issue they had raised might be addressed at the next session (in the spring of 1976) of the Florida legislature. In fact, that possibility was suggested by the letter of September 29, 1975 to the McCarthy committee from the Attorney General's staff. At the hearing, the Deputy Attorney General did not press the May, 1975 date but basically relied on the June 4, 1976 adjournment of the legislature as the commencement of laches. Since the possibility of legislative resolution of the problem was not foreclosed until that

---

1. Fla.Stats. § 103.021(3) reads where pertinent as follows: "Minor political parties which have not elected a president since January 1, 1900, may have the names of their candidates for president and vice president printed on the general election ballots if a petition is signed by 1 per cent of the registered electors of Florida. . . . . "

2. Fla.Stats. §§ 99.152 and 99.153. In most other respects Florida imposes relatively few obstacles to minor political parties and independents. See §§ 101.261, 101.262, 99.095, 99.152, 99.153.

date plaintiffs' delay has been less than three months. Inasmuch as this delay occurred over the summer vacation schedule, making difficult plaintiffs' attempts to contact the appropriate officials in the Attorney General's office, the court finds that the delay was not so unreasonable and prejudicial as to bar plaintiffs from relief.

■ Governor Askew moves for dismissal on the basis that he is an unnecessary party. Although the Secretary of State is the chief election officer, this motion must be denied because the Governor must certify the electors of the successful presidential candidate. Fla.Stat. § 103.021. (The court also observes that no provision is made for the certification of electors of an independent candidate.)

■ Addressing the merits of the complaint, in *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) the Supreme Court recognized that although the state has broad powers under the Constitution to regulate elections, this power is subject to various limitations imposed by the first, fourteenth, fifteenth, nineteenth and twenty-fourth amendments.[3] In that case the Court declared unconstitutional an Ohio statutory scheme which made it virtually impossible for new or minor political parties to get on the presidential ballot. The Court recognized that the state has a legitimate interest in restricting access to the ballot in order to maintain the integrity of the ballot and preserve an orderly election process; however, it required that the means chosen by the state to achieve its goals be carefully scrutinized, for they necessarily place some burdens on two types of rights—"the right of individuals to associate for the advancement of political beliefs, and the rights of qualified voters to cast their votes effectively." 393 U.S. at 30, 89 S.Ct. at 10. Although the question in *Williams v. Rhodes* involved minor political parties, the Court held in the subsequent cases of *Storer*

*v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), and *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974) that independent candidates are entitled to the same ballot consideration. These and other decisions[4] do not mean that a state can impose no limitations at all on minor parties and independent candidates. Clearly the state has the right and the obligation to insure that the ballot does not become a "laundry list" of names. However, a balance must be struck so that frivolous candidates are restricted while serious candidates are provided an opportunity to secure a place on the ballot. Thus in *Storer v. Brown*, supra, the Court ordered a remand to determine whether or not the petitioning requirements in California were impermissibly difficult.

Unlike the situation in *Storer v. Brown*, supra, and *American Party of Texas v. White*, supra, the issue raised in this case is not whether the Florida requirements are too burdensome, because defendants admit that under the Florida statutory scheme it is impossible for an independent candidate to be placed on the presidential ballot. The issue is whether it is constitutional for Florida to bar independent presidential candidates from the ballot altogether. On this question *Storer v. Brown*, supra, is controlling. In *Storer* the Supreme Court specifically recognized the fact that running on a partisan ticket is not an adequate substitute for an independent candidacy:

" . . . [T]he political party and the independent candidate approaches to political activity are entirely different, and neither is a satisfactory substitute for the other. . . . Must [the independent candidate] necessarily choose the political party route if he wants to appear on the ballot? We think not." 415 U.S. at 745–746, 94 S.Ct. at 1286.

■ Thus the Florida statutory scheme falls within the observation of *Storer v.*

---

**3.** Since the decision in *Williams v. Rhodes*, supra, Congress has passed the twenty-sixth amendment which adds an additional limitation upon the state's power to regulate elections.

**4.** *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

*Brown*, supra. While the state can impose reasonable limitations on independent candidates in the interests of protecting the ballot, it cannot bar completely such candidates, for such means are too broad to achieve this goal.

■ Nevertheless, the state has argued that in the present case the state is acting within its powers in keeping McCarthy off the ballot because he has not secured any petitions such as are required[5] of a minor political party's candidate nor has he demonstrated that he has any support from the electorate in Florida. The flaw in this argument is that Florida provides no means in its election code by which an independent candidate may objectively demonstrate his support. Contrary to the state's position, the evidence before the court shows that Mr. McCarthy has considerable support around the nation: it ranges from 10% in the Harris poll to 12% in *Time*'s Yankelovich poll. Because there is nothing before the court to indicate that the voting population in Florida differs significantly from that in other parts of the country, Mr. McCarthy must be considered a serious candidate in this state.

■ The court concludes on the legal merits of plaintiffs' complaint that it would be an unconstitutional abridgement of plaintiffs' rights to deny Eugene McCarthy the opportunity to be placed on the ballot in Florida in the upcoming presidential election. The court is also satisfied that the prerequisites to granting injunctive relief have been met. Plaintiffs would suffer irreparable harm if relief is not granted. Furthermore, this injury outweighs any harm to the defendants since it is conceded that the final form of the ballot could be approved as late as October 12, and the relief granted shall be strictly limited. Finally, granting the relief would not disserve the public interest. Accordingly, it is

ORDERED AND ADJUDGED that defendants Bruce Smathers and Mary Singleton place the name of Eugene McCarthy as a candidate on the presidential ballots in Florida for the 1976 election, and that Governor Reubin Askew certify the names of Mr. McCarthy's electors in the event the election results dictate such action.

The court must point out that the lack of a statutory route to be on the ballot as an independent presidential candidate does not open the door to frivolous candidacies. There must be a showing of substantial support, as Senator McCarthy has, before an independent candidate's name can be placed on the ballot for President.